**UNITED STATES of America, Appellant,**

v.

**Andres SOBERON, Armando Cartaya, Franklin Pena.**

**No. 90–3244.**

United States Court of Appeals, Third Circuit.

Argued Jan. 8, 1991.

Decided April 3, 1991.

As Amended April 8 and April 12, 1991.

---

Constance M. Bowden (argued), Office of United States Attorney, Pittsburgh, Pa., for appellant.

Neil M. Nameroff (argued), Miami, Fla., for appellee, Andres Soberon.

Charles J. Porter (argued), Brucker, Witherel & Zappala, Pittsburgh, Pa., for appellee, Armando Cartaya.

Lee Markovitz (argued), Pittsburgh, Pa., for appellee, Franklin Pena.

Before COWEN, ALITO and ROSENN, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

This criminal appeal concerns the propriety of the district court dismissing two counts of an indictment against three defendants charged in a conspiracy to distribute cocaine. The district court dismissed the indictment because it concluded that a government agent committed perjury at the grand jury hearing in which the indictment was obtained. The district court found that use of allegedly perjurious testimony in obtaining the indictment amounted to prosecutorial misconduct and warranted dismissal of the indictment.

We find that the district court erred in dismissing the charges against one defendant on the basis of prosecutorial misconduct without a finding that the defendant had been prejudiced. We will, therefore, reverse the dismissal of charges against that defendant. Secondly, we find that the district court's conclusion that the government agent committed perjury before the grand jury and that the government committed prosecutorial misconduct by seeking an indictment based on this testimony was clearly erroneous. Accordingly, we will reverse the dismissal of the indictment against the second defendant. Finally, we will reverse the dismissal of the charges against the remaining defendant because he was not before the court at the time.

I.

On August 14, 1988, Carrie Abraham and Daniel Bruno were arrested at the Greater

Pittsburgh International Airport and charged with possessing with intent to distribute two kilograms of cocaine. The police found the cocaine in a suitcase Abraham had transported from Florida. As part of a plea agreement, Bruno and Abraham agreed to assist the Federal Bureau of Investigation ("F.B.I.") in arranging to buy cocaine from their sources.

After a series of preliminary telephone calls, Bruno and Abraham arranged a "buy." On May 2, 1989, Bruno and several F.B.I. agents traveled to Florida where Bruno was supposed to meet Cartaya to buy the cocaine. Once in Florida, Bruno, Special Agent Linda Lee (posing as Bruno's girlfriend), and Special Agent Peter McCann checked into adjoining hotel rooms. The FBI agents wired Bruno's room so that they could record conversations that took place there. On May 3, Bruno called Cartaya to make the buy. But, Bruno was unable to reach him so he called Soberon. Soberon told Bruno that he would send a "buddy" to his hotel room to pick up his "receipts" and that his friend would return a couple of hours after obtaining the "receipts." App. at 1112–13. Soberon's "buddy" turned out to be Franklin Pena, the third defendant in this case.

Later that day, defendant Pena arrived at Bruno's hotel room where Bruno and Agent Lee were waiting. Agent McCann was in the adjoining room recording what was said. Bruno and Agent Lee had a package of money, which they planned to give to Pena in exchange for the cocaine. Pena told Bruno and Agent Lee to take "it" (the package) to the bathroom and he would place "it" in his "fly." Pena then told Bruno that he should call Soberon in two hours. App. at 25–26. When Bruno asked Pena whether he was going to count "it" (the money in the package), Pena replied that he would just take "it" with him. App. at 26. When Agent Lee objected to the manner in which the deal was being conducted, Pena responded "that's the way he [presumably Soberon] wants it," and indicated that he would call "him" and tell "him" that Lee did not want to "do it that way." App. at 28, 31. Pena was then arrested.

After Pena's arrest, Bruno had two telephone conversations with Soberon and one with Cartaya regarding when and how the cocaine would be delivered. Soberon was arrested later that day. Because Cartaya could not be found, however, he was not arrested until after the drug trial against Pena and Soberon had begun.

At the grand jury hearing, the government presented several witnesses regarding Cartaya's, Pena's, and Soberon's activities in order to support the issuance of an indictment against them. In particular, Agent McCann described the conversation between Pena, Bruno, and Agent Lee which he recorded from the adjoining hotel room. Agent McCann testified that:

> Mr. Pena came in and was granted access to the room and they had a conversation where he indicated he was sent there to pick up to the receipts, it's what they were referring to the money as, and that our girl was resisting letting the money walk, leave the room. We are not permitted to [let] the money leave under those kind of conditions. It has to stay in the care and custody of the agent. So there was a conversation about she didn't want to do it that way and Mr. Pena indicated, fine, you'll have to call the guy and we'll do it some other way. He guaranteed her and Bruno that there'd be no problem, that the deal would go through. She offered to have him count it if he wished. He didn't even want to count the money. He just said that his job was to come over and pick up the money, take it back and in two hours they would have the *dope*.
>
> Everyone was getting mixed up on the Andy [Soberon] and Mandy [Cartaya] thing and he said that, ... *I would quote him*, he said, "Actually it's Armando and Andy," speaking about Mandy and Andy. And he indicated also in that conversation that although everybody was talking to Andy on all these phone calls, that it was going through Mandy, that Mandy was going to be the actual source this time of the *cocaine*.

App. at 85–86 (emphasis added).

The grand jury handed down a five count indictment. Only two of the five counts

are relevant to this appeal: Count 1, charging Cartaya, Pena, and Soberon with conspiring to possess more than 500 grams of a substance containing cocaine with intent to distribute, in violation of 21 U.S.C.A. § 841(a)(1) (1981) and 21 U.S.C.A. § 846 (Supp.1989), and Count 3, charging Cartaya and Soberon with using a public telephone to facilitate their conspiracy to distribute cocaine in violation of 21 U.S.C.A. § 843(b)(1981).

On March 19, 1990, the trial against Pena and Soberon began and the jury was sworn. Cartaya had not yet been arrested, and was not on trial and not before the district court. Agent McCann testified during the government's case-in-chief. When McCann acknowledged on cross-examination that Pena had not uttered the precise words "dope" or "cocaine" in the conversation that took place in the hotel room, Pena moved to dismiss the indictment. Pena contended that McCann's use of the words "dope" and "cocaine" was perjury, amounting to prosecutorial misconduct that warranted dismissal of the indictment.

Without the benefit of an evidentiary hearing, the district court summarily determined that Agent McCann's testimony before the grand jury was in fact perjured and the government committed prosecutorial misconduct by obtaining an indictment based in part on Agent McCann's testimony. The district court apparently believed that the only factual determination to be made at an evidentiary hearing was whether the prosecutor was aware of the discrepancy in Agent McCann's testimony, and decided there was prosecutorial misconduct, regardless of whether the prosecutor was aware of the discrepancy.[1]

The district court found that Pena was prejudiced by the prosecutorial misconduct before the grand jury, and dismissed Count 1 of the indictment with respect to him. The district court explicitly found that So-beron was not prejudiced by the misconduct, and made no finding one way or the other regarding prejudice to Cartaya. Despite the absence of a finding of prejudice to Soberon or Cartaya, the district court, in what it denominated an exercise of its supervisory power, dismissed Count 1 with respect to both of these defendants as a sanction against the government. The district court also dismissed Count 3 of the indictment, against Cartaya and Soberon based on its conclusion that the government would be unable to prove the public communications charge in the absence of the count charging the underlying offense.

This appeal by the government followed, with our jurisdiction predicated on 18 U.S.C.A. § 3731 (Supp.1990). We must decide the following issues: (1) is this appeal barred by the Double Jeopardy Clause; (2) did the district court err in dismissing the charge against Soberon in light of its finding that he was not prejudiced by the purported prosecutorial misconduct; (3) did the district court err in dismissing the indictment with respect to Pena based on its finding that Agent McCann committed perjury before the grand jury; and (4) did the district court err in dismissing the indictment with respect to Cartaya, who was not before the Court.[2]

## II.

Pena challenges our jurisdiction to hear this appeal based on his rights under the Double Jeopardy Clause. He argues that, consistent with their constitutional rights, the defendants cannot be tried again since the indictment was dismissed for insufficient evidence, an acquittal on the merits. We address this threshold jurisdictional question first.

The Double Jeopardy Clause of the Fifth Amendment protects an individual from being put in jeopardy twice for the same offense. Jeopardy in a jury trial attaches

---

1. According to the district judge, if the attorney was aware of the discrepancy, he committed prosecutorial misconduct by using the testimony. If he was unaware of the discrepancy, he committed prosecutorial misconduct by not discovering it.

2. The government also sought assignment of the case to another district court judge on remand. However, the government withdrew this request at oral argument in light of the fact that Judge Paul A. Simmons (who heard the matter) has retired.

when the jury is empaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978). If a defendant is thereafter acquitted on the basis of a ruling by the court that the evidence is insufficient to convict, the government may not appeal the judgment because reversal would result in a second trial. *United States v. Scott*, 437 U.S. 82, 91, 98 S.Ct. 2187, 2193, 57 L.Ed.2d 65 (1978). In cases where the defendant has successfully sought to have a trial terminated without a factual determination of his guilt, however, the government may appeal the dismissal and the defendant may be retried. *Id.* at 101, 98 S.Ct. at 2199. We have interpreted *Scott* as prohibiting an appeal on Double Jeopardy grounds only where "in terminating the proceeding, the trial court *actually resolves* in favor of the defendant a factual element necessary for a criminal conviction." *United States v. Maker*, 751 F.2d 614, 622 (3d Cir.1984) (emphasis added).

We find that the Double Jeopardy Clause was not implicated in these dismissals, and does not bar this appeal with respect to any of the defendants. As to Cartaya, he was not even before the court with Pena and Soberon, and no jury was sworn to hear the charges against him. In fact, he had not even been arrested when the trial commenced. Obviously, the indictment was dismissed before jeopardy had attached with respect to Cartaya.

While jeopardy did attach with respect to Pena and Soberon, the dismissal of the charges against them was not based on a finding of insufficient evidence or the resolution of any essential factual element. The plain language of the orders reveals that the charges were dismissed on the basis of prosecutorial misconduct. The record of the court proceeding further indicates that the court based its dismissal solely on what it perceived to be the discrepancy between Agent McCann's trial testimony regarding the conversation between Bruno, Pena, and Agent Lee, and the actual tape recorded conversation. This discrepancy, if indeed it was a discrepancy, is unrelated to an actual finding on the merits.

One defendant points to a portion of the record where the court stated "we addressed a lot of the factual elements," and "it's not clear at all that you have a right to appeal this case," to support his assertion that we have no jurisdiction over this appeal because the charges were dismissed on the basis of insufficient evidence. App. at 948. These assertions by the district court do not render its dismissal of the indictment a disposition on the merits and certainly do not determine our jurisdiction. *See Maker*, 751 F.2d at 621 n. 2 ("[T]he determination of whether there has been an acquittal does not turn on how the district court labels its decision."). In fact, the district court could not possibly have rendered a decision based on insufficient evidence since the government had not yet rested its case when the district court dismissed the indictment.

### III.

#### A. Soberon

Having determined our jurisdiction to hear this matter, we turn now to the merits of the appeal. We first examine the dismissal of the charges against Soberon. Our disposition here turns on whether the district court erred in dismissing Count 1 on the basis of prosecutorial misconduct in light of its finding that Soberon was not prejudiced by the purported misconduct.

■ *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) established the standard for dismissing an indictment based on error in a grand jury proceeding. The Supreme Court held in *Bank of Nova Scotia* that a district court is bound by the doctrine of "harmless error" and may not dismiss an indictment on the basis of prosecutorial misconduct before the grand jury without making a factual finding that the defendant was prejudiced by that misconduct. *Id.* at 255, 108 S.Ct. at 2374. *See also United States v. Martino*, 825 F.2d 754, 759 (3d Cir.1987). To find prejudice, the district court must establish that " 'the violation substantially influenced the grand jury's decision to indict,' or ... there is

'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia,* 487 U.S. at 256, 108 S.Ct. at 2374 (quoting *United States v. Mechanik,* 475 U.S. 66, 78, 106 S.Ct. 938, 945, 89 L.Ed.2d 50 (1986)).

 One defendant argues that the alleged prosecutorial misconduct at issue, the use of perjured testimony before a grand jury, falls within the narrow exception to the harmless error rule articulated in *Bank of Nova Scotia.* He refers to the Court's recognition that prejudice need not be shown in cases where the errors are such that the "structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Bank of Nova Scotia,* 487 U.S. at 257, 108 S.Ct. at 2375.

We hold that the presentation of the allegedly perjured testimony to the grand jury does not fall into the narrow category of cases in which dismissal of charges without a showing of prejudice is warranted. According to *Bank of Nova Scotia,* the requirement of prejudice is excused only in extreme cases, where the "structural protections of the grand jury" have been compromised and remedies other than dismissal would be impractical. *Id.* at 257, 108 S.Ct. at 2375. The only instances in which the Supreme Court has recognized this exception to the harmless error rule have involved grand juries selected in a discriminatory manner, which tainted the fact finding process itself. *See, e.g., Vasquez v. Hillery,* 474 U.S. 254, 260–64, 106 S.Ct. 617, 621–24, 88 L.Ed.2d 598 (1986) (dismissal of indictment mandated by racial discrimination in selection of grand jurors); *Ballard v. United States,* 329 U.S. 187, 195, 67 S.Ct. 261, 265, 91 L.Ed. 181 (1946) (dismissal of indictment because women were excluded from grand jury). The purported error here does not rise to this level. Accordingly, the district court erred in dismissing Count 1 against a defendant who had not been prejudiced.

Because the district court erred in dismissing Count 1 against Soberon, we will reverse the dismissal of Count 3 as well.

The district court dismissed Count 3, which charged Cartaya and Soberon with using a public telephone to facilitate the conspiracy charged in Count 1, on the basis of its finding that the government would be unable to prove that charge without the count charging the underlying conspiracy in Count 1. Even if the district court's rationale for dismissing Count 3 is valid, it is no longer viable in light of our reversal of the dismissal of Count 1. Accordingly, we will reverse the district court's dismissal of Count 3 against Soberon.

 On appeal, Soberon points to another alleged instance of prosecutorial misconduct and argues that we should affirm the dismissal of the charges against him on that basis. We can affirm the judgment of the district court on any grounds that are supported by the record. *United States v. Cahalane,* 560 F.2d 601, 608 (3d Cir.1977). We cannot, however, base our decision on grounds that were not raised before the district court. *United States v. Aguilar,* 849 F.2d 92, 99–100 (3d Cir.1988). Because Soberon did not raise before the district court this other alleged incident of prosecutorial misconduct, we will not consider it now.

### B. Pena

 Next, we turn to the dismissal of Count 1 against Pena on the basis of prosecutorial misconduct. The district court found that Agent McCann committed perjury before the grand jury and that the use of this testimony to obtain an indictment constituted prosecutorial misconduct. Perjury is defined as knowingly making a false, material declaration under oath. *See* 18 U.S.C.A. § 1623 (1984). Because the determination of the district court that Agent McCann committed perjury is a factual finding, it will stand unless found to be clearly erroneous. After reviewing the basis of the district court's determination, we hold that its finding of perjury by Agent McCann is indeed clearly erroneous.

The district court found that Agent McCann admitted at trial to committing perjury before the grand jury because he acknowledged the words "dope" and "co-

caine" were not actually used in the conversation about which he testified. McCann's admission that those two words were not actually part of the conversation is certainly not an admission of a knowing misrepresentation. In fact, it cannot be reasonably interpreted even to suggest perjury. ·

It is obvious from the record before us, as it should have been obvious to the district court, that Agent McCann was paraphrasing the conversation. Agent McCann carefully indicated a direct quote when he quoted Pena verbatim, demonstrating the absence of any attempt to mislead the grand jury. Specifically, he preceded direct quotes of Pena by the phrase "I would quote him." App. at 86. Furthermore, on the record before us, we fail to comprehend how the grand jury could reasonably have been led to believe that Agent McCann was testifying that the words "dope" and "cocaine" were part of the actual conversation he was recounting.

Because we find that the record fails to suggest perjury, we hold that the district court's finding of prosecutorial misconduct based on this imagined perjury is clearly erroneous. If the district court could have formed a reasonable suspicion that perjured testimony was presented to the grand jury, the proper course would have been to hold an evidentiary hearing on the issue. In the absence of anything in the record even suggesting perjury, however, we find no need to remand for an evidentiary hearing at this point. Accordingly, we will reverse the dismissal of the charges in Count 1 against Pena, and remand for a new trial.

## C. Cartaya

█ Finally, we consider the dismissal of the indictment with respect to Cartaya. The district court dismissed the charges against Cartaya on the basis of prosecutorial misconduct, despite the fact Cartaya was not even before the court at the time. A court cannot *sua sponte* dismiss the charges against a defendant not currently before it during another defendant's trial. We will therefore reverse the dismissal of the charges against Cartaya.[3]

## IV.

In conclusion, we hold that the district court erred in dismissing the charges against Soberon on the basis of prosecutorial misconduct in the absence of a showing that he was prejudiced by the purported misconduct. We further hold that the district court erred in dismissing the charge against Pena because its finding that the F.B.I. agent committed perjury before the grand jury is clearly erroneous. Finally, we hold that the district court erred in dismissing the charges against Cartaya because he was not on trial before the court. In accordance with these holdings, we will reverse dismissal of the indictment with respect to all defendants and remand for a new trial.

ROSENN, Circuit Judge, concurring and dissenting.

I join in the opinion of the majority insofar as it reverses the district court's dismissal of the indictments against the defendants, Andres Soberon and Armando Cartaya. I also agree with the majority that the Double Jeopardy Clause of the federal constitution is not implicated in these appeals; the dismissal of the indictments in no way bars our jurisdiction to hear the appeals. I believe, however, that the district court properly dismissed the one-count conspiracy indictment against the defendant, Franklin Pena, although I differ as to the grounds for dismissal.[1] I therefore re-

---

**3.** As Cartaya was not on trial before the district court, he obviously made no motion for dismissal on the basis of prosecutorial misconduct. Before us on appeal, however, he requests an evidentiary hearing on the issue of prejudice, in light of our holding that an indictment cannot be dismissed on the basis of this type of prosecutorial misconduct without a finding of prejudice. As we held with respect to Pena, an evidentiary hearing on the issue of prejudice would serve no purpose because nothing in the record indicates perjury or prosecutorial misconduct. Accordingly, we decline to remand for an evidentiary hearing on the issue of prejudice to Cartaya.

**1.** A court of appeals is not precluded from affirming a judgment of the district court on any basis which finds sufficient support in the record. *Myers v. American Dental Ass'n,* 695

spectfully dissent from the majority's reversal of the district court's dismissal of the indictment as to Franklin Pena.

### I.

In reversing the dismissal of the indictment as to Pena, the majority concludes that even though Agent McCann gave the grand jury critically false and misleading evidence which the district court found prejudiced Pena, this evidence does not bar Pena's indictment. The majority reaches this result based on the rationalization that the testimony was not perjurious. Whether the testimony is perjurious depends upon whether the testimony was under oath and the state of mind of the witness; the absence of perjury, however, in no way diminishes the destructive effect of the false and misleading evidence upon its recipient.

Special agent McCann was a seasoned government agent with many years of investigating experience. He had personally monitored the conversation in Bruno's hotel room among Pena, Bruno, and undercover agent Lee. Only five days later he testified before the indicting grand jury. Before testifying, McCann reviewed the transcript of the tape recording of that same conversation. McCann's relatively brief grand jury testimony consisted in part of the following statements:

> [Pena] *said* that his job was to come over and pick up the money, take it back and in two hours they would have the *dope*. And [Pena] indicated also in the conversation ... that Mandy was going to be the actual source this time of the *cocaine*. (Emphasis added).

As McCann later admitted at the trial of the defendants, Pena never used the words "dope" or "cocaine." Following his indictment, Pena spent five months in jail because he could not post bond.

The majority concludes that McCann was merely "paraphrasing" the hotel conversation. However, the evidence in the record does not support the conclusion that it was

a fair paraphrase. According to the transcript of the tape recording, the actual substance of the conversation with Pena was exemplified by the following exchange:

> Bruno: "... I thought you were gonna count the receipts, now you're saying you don't even wanna count it. How you know how much you're supposed to pick up?
>
> Pena: "All I gotta do is take it [the money] over there. That's the whole thing. Then, from there he's supposed to call him up in two hours. Okay? And he'll be at home."
>
> Agent Lee: "What? Call Mandy up?"
>
> Pena: "No, Andy."

Throughout the entire conversation, Pena made no reference, explicit or otherwise, to anything which Bruno was to receive in exchange for the money.

I disagree with the majority that McCann's statements to the grand jury merely "paraphrased" this conversation. McCann strongly implied that Pena made some overt reference to drugs during this conversation. A grand juror listening to McCann's testimony would have believed that Pena made such a reference. That implication was absolutely untrue. Even if, in McCann's mind, the testimony given was a "paraphrase," it was misleading, misinformative, reckless and constituted misconduct. By attributing the words "dope" and "cocaine" to Pena, McCann put the key conspiratorial words in the mouth of Pena. In so doing, McCann disarmed the grand jury from its historic role as "a primary security to the innocent against hasty, malicious, and oppressive prosecution." Kamisar, LaFave, Israel, *Modern Criminal Procedure*, ch. 15, 194 (1989).

Prior to trial, Pena, who contends that he believed the hotel deal to have been a jewelry transaction, offered three times to take a polygraph examination with a government examiner to prove his innocence. The Government refused. The Government, however, did tender its coop-

F.2d 716, 725 n. 14 (3d Cir.1982), *cert. denied,* 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983).

erating witnesses, Bruno and Abraham, to polygraph examinations, which they both failed. Although perhaps not admissible as evidence, Pena subsequently passed a private polygraph examination administered by a police officer, in which the examiner asked Pena whether he believed he was aiding a *jewelry* transaction. Nothing else in the record is inconsistent with Pena's alibi. Indeed, statements made by Pena during the hotel conversation evidenced a lack of awareness that this was to be a *drug* transaction for $36,000. Pena did not want to count the money. Pena brought with him no bag or satchel with which to carry the $36,000 in small bills. A search of Pena's car turned up no evidence of drug paraphernalia. Of course, one cannot be convicted of participating in a *conspiracy* to purchase *drugs* when one does not know that drugs are involved in the transaction.

The district court here found that McCann's false testimony severely prejudiced the grand jury against Pena, possibly to the point of being the primary reason for Pena's indictment. Placing these two conspiratorial words in Pena's mouth was certainly material: it was the only evidence on record that Pena knew this was a *drug* transaction. The Government has not pointed to any other evidence supporting the indictment against Pena except this single conversation in the hotel room. This lack of other evidence against Pena reinforces the prejudicial impact of McCann's false testimony before the grand jury.

At the defendants' trial, Agent McCann was the first to testify for the Government. On cross-examination, he acknowledged that, contrary to his grand jury testimony, there was no reference to cocaine or dope during the 3–4 minute conversation with Pena in the hotel room. McCann also admitted that his testimony on direct examination, to the effect that Pena had said that he or someone else would return with two kilograms of cocaine, was "incorrect." McCann confirmed that the federal agents had no knowledge of the existence of Pena until the moment he walked into the hotel room. In addition, McCann stated that in the five days between Pena's arrest and McCann's appearance before the grand jury, McCann had "probably" met with the prosecuting attorney, Kaufman, "to discuss and prepare [McCann's] testimony." Even if not perjurious, McCann's testimony was nonetheless untrue, reckless, misleading, and highly prejudicial. Without it, the Government had little evidence against Pena, except his presence in the hotel room to pick up the money at the direction of Soberon.

The majority, however, concludes that "McCann's admission that these two words were not actually part of the conversation is certainly not an admission of a knowing misrepresentation." Even if one accepts the majority's construction that the misrepresentation was not "knowing," this generous characterization of the misrepresentation in no way reduces the prejudicial effect of the misrepresentation on those it was intended to persuade. False testimony can be just as untruthful and deceptive whether given knowingly or innocently. Perjury adds to the legal responsibility of the witness but its absence in no way minimizes the substantive falsity in the search for the truth. The Biblical Commandment enjoining a person from bearing false testimony against a neighbor speaks not in terms of perjury but of falsity. To the grand jury hearing the witness, the inquiry is what is the truth; the oath to the witness is whether the testimony about to be given is the truth and the whole truth. Especially when a man's freedom is at stake, courts of law should not treat falsity complacently. The majority fails to give any consideration to the prejudicial effect the conceded misrepresentation must have had on the grand jurors.

This court's standard of review of the trial court's fact-finding is whether it was clearly erroneous. *Carter v. Rafferty,* 826 F.2d 1299 (3rd Cir.1987), *cert. denied,* 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988); *see also United States v. Bonanno,* 852 F.2d 434, 437 (9th Cir.), *cert. denied,* 488 U.S. 1016, 109 S.Ct. 812, 102 L.Ed.2d 801 (1989) (factual findings underpinning dismissal of indictment for outrageous government conduct reviewed under clearly erroneous standard). A finding of fact is clearly erroneous "only if it is completely devoid of a credible evidentiary basis or

bears no rational relationship to the supporting data." *American Home Products Corp. v. Barr Laboratories, Inc.*, 834 F.2d 368, 370–71 (3rd Cir.1987). There is sufficient evidence on the record, considered by the district court, that McCann testified falsely and recklessly before the grand jury and that this testimony prejudiced Pena.

There is also support in the record that McCann did not *knowingly* lie to the grand jury. However, even if McCann believed that he was giving truthful testimony to the grand jury, his false attribution to Pena of the highly incriminating words "cocaine" and "dope" was at least reckless misconduct which "substantially influenced the grand jury's decision to indict" or raises "grave doubts" that the decision to indict was not free from the prejudice caused by the false testimony. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988).

### III.

Thus, in light of the infringement of Pena's constitutional right to an unbiased grand jury, and the demonstrated weakness of the case against Pena, I believe that the district court did not abuse its discretion in dismissing Count 1 against Pena with prejudice.