**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1286
_____

UNITED STATES

v.

RICHARD BOYLE,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Crim. No. 2-17-cr-00197-1
District Judge: Honorable Gene E. K. Pratter
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on January 26, 2021

Before: JORDAN, MATEY, *Circuit Judges*, and HORAN,[*] *District Judge*

(Opinion filed: March 9, 2021)

_____

OPINION[**]

_____

---

[*] Honorable Marilyn J. Horan, District Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Richard Boyle is a serial bank robber. From 2012 to 2016, he committed eleven bank robberies, stealing almost half a million dollars. He challenges his conviction after trial, alleging errors in the admission of evidence and the conduct of the prosecutors. Finding no merit to these claims, we will affirm.

## I.    BACKGROUND

Needing funds to pay the bills, Boyle began moonlighting as a bank robber. Meticulous in his planning and routine in his execution, he preferred to stage the robberies at the end of the week, wearing an outer layer of clothing, hat, glasses, and a mask. Gloves concealed his fingerprints, and he sometimes used bleach to remove traces of DNA. As a result, no physical evidence linked Boyle to the robberies.

But plenty of circumstantial evidence did. Cell site data showed Boyle's phone idle during all but one of the robberies. Before one heist, a disposable phone was used to place a diversionary call to law enforcement about a bomb threat. Law enforcement traced that phone to a library, where video surveillance and witness testimony placed Boyle at the time of the call. Boyle's finances followed the robberies, recovering from less than $400 in the bank and over $20,000 in debt to spending large sums, as the robberies racked up. After many—sometimes even the same day—Boyle would make large deposits of cash into his personal and business accounts. He explained his fortune on timely gambling wins and a host of odd jobs, but he named only a handful of customers, who collectively paid him

2

around $1,200, and casino records show Boyd was a low-stakes gambler who lost more than he won.

A grand jury charged Boyle with 11 counts of bank robbery, in violation of 18 U.S.C. § 2133(a); 10 counts of using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c); and 10 counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Before trial, the Government moved to admit evidence, pursuant to Federal Rule of Evidence 404(b), about Boyle's 2008 conviction for multiple bank robberies, and financial information he provided to his state parole officer. The District Court granted the motion, allowing Boyle to renew his objection at trial. Boyle also filed a motion for a hearing under *Franks v. Delaware*, arguing that the affidavit in support of a search warrant executed at his home contained false statements or omissions. The District Court denied that motion, and a second raising the same argument. At trial, and again post-trial, the District Court denied Boyle's motions for a judgment of acquittal.

The jury returned guilty verdicts on all counts. The District Court sentenced Boyle to a term of imprisonment of 852 months, a three-year term of supervised release, and restitution of $495,686. Boyle timely appealed and we will affirm.[1]

## II. DISCUSSION

### A.  Evidence about Boyle's Prior Robberies

Boyle first argues that the Government introduced prejudicial evidence about his prior criminal acts. Federal Rule of Evidence 404(b) provides that "[e]vidence of any other

---

[1] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291.

crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But such evidence may be admissible for other purposes, including "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). We review the District Court's decision to admit evidence under Rule 404(b) for an abuse of discretion, which "may be reversed only when . . . clearly contrary to reason and not justified by the evidence." *United States v. Balter*, 91 F.3d 427, 437 (3d Cir. 1996) (internal quotation marks and citation omitted). To admit such evidence, the Government needed to show a relevant purpose unrelated to propensity, with probative value not substantially outweighed by the potential for unfair prejudice to the defendant. *See Huddleston v. United States*, 485 U.S. 681, 691 (1988); Fed. R. Evid. 403. The district court enjoys "considerable leeway" to balance prejudice against probative value. *United States v. Sampson*, 980 F.2d 883, 886 (3d Cir. 1992).

Here, the Government used evidence of Boyle's earlier bank robberies for proper purposes, such as motive, preparation, and identity. And the District Court's multiple limiting instructions—whose language Boyle's counsel never objected to—cured any prejudicial effect. In his 2008 sentencing, Boyle admitted that he committed the robberies because he needed money to make car payments, pay tuition, and buy photography equipment. (App. at 63–64.) So too here. (*See* App. at 940, (telling his parole officer that he did not have a job), 832 (paying back rent with $9,000 in money orders), 1679 (buying a car with cash), 1550–51 (paying for tuition in cash), 1679–81 (buying thousands of dollars of camera equipment).) As the District Court correctly held, Rule 404(b)(2)

4

expressly permits admission of other-acts evidence for, among other things, "proving motive." Fed. R. Evid. 404(b)(2).

Boyle, as the Government explained, used many of the same techniques in both sets of robberies. He would often wear two sets of clothes, including a hat, jacket, and tie. He always covered his face and left his mobile phone at home. He always targeted banks within twenty miles of his home. "[P]reparation" and "identity" are both proper nonpropensity purposes under Rule 404(b)(2), and both properly identified by the District Court in its decision. Boyle complains that the evidence was more prejudicial than probative, but the District Court minimized that risk with repeated limiting instructions. And "we presume that . . . jur[ies] follow[] the limiting instruction that the district court gave and considered evidence . . . only for the limited purposes offered." *United States v. Cruz*, 326 F.3d 392, 397 (3d Cir. 2003); *see also Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Boyle's counsel declined to submit alternative instructions or supplement the ones given, and he raised no concerns. And, as the District Court noted, both parties correctly commented on the limited purpose of the evidence in their closing arguments. On balance, admitting this evidence was not error.

## B.     The Motion to Dismiss the Indictment

Boyle argues Police Detective Jeffrey McGee fabricated evidence and lied to the grand jury, violating his due process rights. But no such prosecutorial misconduct occurred, and even if it did, it was rendered harmless under *United States v. Mechanik* by his subsequent conviction by a petit jury.

5

"We review a district court's decision regarding a motion to dismiss an indictment because of prosecutorial misconduct for abuse of discretion." *United States v. Bryant*, 655 F.3d 232, 238 (3d Cir. 2011). "[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). To make out a claim, the defendant must show that "the structural protections of the grand jury [were] so compromised as to render the proceedings fundamentally unfair." *Id.* at 257.

The bar is high. As we have explained, "the societal interest in avoiding the expense of a second trial far outweighs the appellants' interest in having a new trial based solely on prosecutorial misconduct before the grand jury." *United States v. Console*, 13 F.3d 641, 672 (3d Cir. 1993). In most cases, errors before a grand jury diminish in significance after trial, as "the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt." *Id.* at 672 (quoting *United States v. Mechanik*, 475 U.S. 66, 70 (1986)).

Boyle's claims do not clear that hurdle. He argues that the Government knowingly presented false testimony in the grand jury, pointing to Detective McGee's testimony that Boyle bought and activated the TracFone. That testimony mirrors the phone records introduced at trial. The library's video also showed Boyle entering the library at the relevant time and inspecting a computer terminal. A witness testified that Boyle asked him how to access the computers. And video evidence showed Boyle approach the information

desk, ask the clerk a question, and then walk in the direction of the computers. The TracFone was activated from the terminal soon after.

Boyle also contends that Detective McGee lied to the grand jury about statements made by one of the witnesses, Kyung Lee. (Opening Br. at 25–29.) Detective McGee did tell the grand jury that Lee reported that the bank robber was wearing an "old man" mask at the PNC robbery, when in fact she did not so testify. But it is unclear why Detective McGee's misstatement matters. The grand jury reviewed photos showing that the person who robbed PNC was wearing a mask. Lee never singled out Boyle as the robber. And McGee did not claim that she did.

Boyle next argues McGee lied to the grand jury when he testified that Boyle left his cell phone at home during the 2008 robberies. Not so. Rather, McGee testified that one of the police officers went to Boyle's home in 2008 following a robbery and, when his children called his phone, it could be heard ringing upstairs. Boyle's 2008 arrest report corroborated those events.

Finally, Boyle complains that references to his prior bank robbery convictions rendered the grand jury process unfair. But the Federal Rules of Evidence do not apply to grand juries. *See* Fed. R. Evid. 1101(d) (excluding grand jury proceedings from the scope of the rules, except for the rules on privilege); *Costello v. United States*, 350 U.S. 359, 363 (1956) (recognizing that grand juries may act solely on testimony that would be inadmissible at trial, such as hearsay evidence).

For those reasons, Boyle has not shown that there was misconduct before the grand jury, let along error rising to the level needed to dismiss the case. *United States v. Soberon*,

929 F.2d 935, 940 (3d Cir. 1991) (allegedly perjured testimony to the grand jury does not fall into the narrow category of cases warranting dismissal).

## C. The District Court Properly Denied a *Franks* Hearing

The right to a *Franks* hearing is not absolute. Instead, the defendant must (1) make a "substantial preliminary showing" that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit, and (2) show that the false statement or omitted facts are "material to the finding of probable cause." *United States v. Yusuf*, 461 F.3d 374, 383–84 (3d Cir. 2006). Boyle contends that his second motion cited "newly discovered evidence," and the District Court erred by failing to conduct an evidentiary hearing on this basis. He is mistaken.

Detective McGee supported his application for a search warrant for Boyle's home with an affidavit. The affidavit included information about the TracFone used at the library and the identification of Boyle by a confidential informant who then positively identified photos of Boyle at the library on the day the phone was activated. Boyle points to unsworn summaries of interviews conducted by a defense investigator challenging phone activation records, and someone who Boyle claims is the Government's confidential source and whose husband denies she ever spoke with Detective McGee. (App. at 215–16.) He also claims that no evidence shows that Boyle used the computer at the library. The record refutes these claims. The Government received, and presented at trial, an email from TracFone with an IP address associated with the library. The unsworn testimony of the alleged informant's husband does not cause us to discount Detective McGee's sworn

8

testimony that he interviewed the informant. And two witnesses present at the library—one of whom testified at trial—stated that Boyle had asked them how to access a computer.

Boyle has not made a "substantial preliminary showing" that Detective McGee knowingly or recklessly lied in his search warrant affidavit. The District Court properly rejected his second motion for a *Franks* hearing.

## D.     Substantial Evidence Supported Boyle's Conviction

Finally, Boyle argues that the evidence at trial was insufficient for the jury to support his convictions. (Opening Br. at 56–61.) We do not agree. When reviewing the sufficiency of the evidence, we ask whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (emphasis in original and citation omitted). Our review is "highly deferential"; the jury's verdict "must be upheld as long as it does not fall below the threshold of bare rationality." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430, 431 (3d Cir. 2013) (en banc) (internal quotation marks omitted).

Boyle offers three claims of insufficiency: (1) The Government never presented direct evidence that he was the actual bank robber; (2) the Government never showed that the banks were FDIC-insured; and (3) the Government never proved the knowledge element of the money laundering offenses. Each lacks merit.

First, while the Government never presented physical evidence or eyewitness testimony connecting him to the robberies, the circumstantial evidence was more than

9

adequate. A rational juror could have concluded as all twelve did, that this evidence was sufficient.

Second, an employee of each bank testified that the bank was FDIC-insured, and the Government introduced self-authenticating FDIC certificates of insurance. (App. at 2213; Supp. App. at 42–82.) That is more than sufficient. *See United States v. Barel*, 939 F.2d 26, 38 (3d Cir. 1991).

Finally, expert testimony presented at trial showed that Boyle knowingly laundered money through Square. Boyle, the expert explained, used his credit cards to process $17,000 through Square to his photography business, Sky Eye View. Boyle paid a fee on each transaction, and then received the money back from Square, less the fees, in the amount of $16,532.50. In other words, Boyle paid roughly $470 to put $17,000 in his business bank account, rather than simply transfer it there via wire for nothing. Boyle argued that this was merely evidence that he was "advanc[ing] his company funds at a lower rate than he would have incurred by using his credit cards for cash advances." (Opening Br. at 61.) That is one possible inference. Another is that he was laundering money made by robbing banks through a fake aerial photography business. And that is apparently the one the jury made.

## III. CONCLUSION

For these reasons, we will affirm the District Court's conviction.