**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1124
_____

UNITED STATES OF AMERICA

v.

BRYANT CALLOWAY,
                                  Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-17-cr-00518-001)
District Judge: Honorable Juan R. Sanchez

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 31, 2022

_____

Before: CHAGARES, <u>Chief Judge</u>, SHWARTZ, <u>Circuit Judge</u>, and ROSENTHAL,
<u>District Judge</u>.[*]

(Filed: April 1, 2022)
_____

OPINION[**]
_____

_____

        [*] Honorable Lee H. Rosenthal, Chief U.S. District Judge for the Southern District
of Texas, sitting by designation.
        [**] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Bryant Calloway was convicted of, among other things, murder in relation to a drug trafficking crime. He appeals, arguing that (1) the Government presented perjurious testimony to the grand jury, and (2) the District Court improperly restricted his recross examination of two witnesses. Because these arguments are meritless, we will affirm.

I

Two rival crews distributed crack cocaine within a few blocks of each other in the Mill Creek neighborhood of West Philadelphia. One crew operated in and around the "Pit" (a sunken basketball court), and the other crew operated in and around the "Grounds" (a public playground). Calloway, a member of the Pit crew, wished to expand his crack distribution into the Grounds. To that end, Calloway and an associate opened fire on Brian Littles ("the Victim") and Clayton Roberts, two members of the Grounds crew who were selling crack cocaine at the Grounds. The Victim was killed.

A grand jury indicted Calloway for, among other things, conspiracy to distribute crack cocaine and the murder of the Victim in connection with a drug trafficking crime. Federal agents and civilian witnesses, including Valdo Guilford, testified before the grand jury. Guilford testified that he saw Calloway entering the Grounds the night of the murder, heard gunshots, saw Calloway fleeing the Grounds with a gun after the gunshots, and that Calloway later confessed to him that he had killed the Victim.

At trial, Guilford and nineteen other witnesses testified. Defense counsel sought to recross two witnesses, Guilford and Roberts, but the District Court denied recross of

2

Guilford and permitted only one question on recross of Roberts. The jury convicted Calloway on all counts, and the Court sentenced him to life in prison plus twenty years' imprisonment.

Calloway appeals.

## II[1]

Calloway argues that (1) the Government presented perjurious testimony to the grand jury; and (2) the District Court improperly restricted Calloway's recross of Guilford and Roberts at trial. We address each argument in turn.

## A[2]

Knowingly presenting perjurious testimony to the grand jury constitutes prosecutorial misconduct. United States v. Soberon, 929 F.2d 935, 940 (3d Cir. 1991). A petit jury's guilty verdict, however, renders harmless such misconduct. United States v. Console, 13 F.3d 641, 672 (3d Cir. 1993). This is because

> [a]ny prosecutorial misconduct before [a] grand jury ha[s] the theoretical
> potential to affect the grand jury's determination whether to indict [a] . . .
> defendant[] for the offenses with which [he was] charged. But [a] petit jury's
> subsequent guilty verdict means not only that there was probable cause to

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[2] Calloway did not raise his perjurious testimony claim before the District Court. As a result, we review it for plain error. See United States v. James, 955 F.3d 336, 344 n.7 (3d Cir. 2020), cert. denied, 141 S. Ct. 329 (2020). To demonstrate plain error, an appellant must prove that (1) there was an error, (2) "the error was 'plain' at the time of appellate consideration," and (3) "the error affected substantial rights." Gov't of V.I. v. Rosa, 399 F.3d 283, 293 (3d Cir. 2005). An error that "does not affect substantial rights" is a "harmless error" and "shall be disregarded." United States v. Olano, 507 U.S. 725, 731 (1993) (quoting Fed. R. Crim. P. 52(a)).

believe that the defendant[] w[as] guilty as charged, but also that [he was] in fact guilty as charged beyond a reasonable doubt. Measured by [a] petit jury's verdict, then, any error in [a] grand jury proceeding connected with [a] charging decision [i]s harmless beyond a reasonable doubt.

Id. (citation and quotation marks omitted). Here, a petit jury convicted Calloway after hearing testimony from twenty witnesses.[3] The petit jury's guilty verdict renders harmless Guilford's allegedly perjurious grand jury testimony.

There are "isolated exceptions to the harmless-error rule," but none applies here. Bank of Nova Scotia v. United States, 487 U.S. 250, 256-57 (1988). The Supreme Court has recognized structural error in the grand jury context only when race or sex discrimination occurred in grand jury selection. See Vasquez v. Hillery, 474 U.S. 254, 263 (1986) (race); Ballard v. United States, 329 U.S. 187, 193 (1946) (women); see also United States v. Harmon, 833 F.3d 1199, 1204 (9th Cir. 2016) (excluding grand jurors based on race or sex is the "only identified structural error" related to grand jury practice). There is no assertion that the grand jury selection process here was improper.

Some appellate courts have also concluded that there is structural error when "the prosecutor's conduct . . . amount[s] to a knowing or reckless misleading of the grand jury

---

[3] Other witnesses corroborated Guilford's testimony. Roberts, an eyewitness to the shooting, identified Calloway as the shooter. Ballistics evidence from the crime scene matched a firearm recovered from a house associated with Calloway. The leader of the Grounds crew testified that he repeatedly denied Calloway's requests to expand distribution into the Grounds and admitted that he orchestrated an attack on Calloway in retaliation for Calloway's murder of the Victim. Finally, Calloway's own actions towards Guilford in prison, calling him a "rat" and "hot" in front of fellow inmates the morning of Guilford's trial testimony, are consistent with the actions of a guilty man. Thus, sufficient evidence supports Guilford's account and the petit jury's verdict.

4

as to an essential fact," United States v. Lombardozzi, 491 F.3d 61, 79 (2d Cir. 2007) (citation and quotation marks omitted), or when "the prosecutor engage[s] in flagrant or egregious misconduct which significantly infringe[s] on the grand jury's ability to exercise independent judgment," United States v. Lopez-Gutierrez, 83 F.3d 1235, 1245 (10th Cir. 1996) (quotation marks omitted).[4]

Even assuming our Court recognized these exceptions, Guilford's allegedly perjurious grand jury testimony does not implicate them. First, the essential facts from Guilford's grand jury testimony tracked his trial testimony: (1) Guilford purchased crack cocaine from Calloway; (2) Guilford saw Calloway cook crack cocaine at a house on Funston Street; (3) Calloway told Guilford he wanted to sell crack cocaine in the Grounds; (4) Calloway told Guilford the Grounds crew would have to "get down or lay down," SA151-52, A469; (5) Guilford saw Calloway enter the Grounds the night of the murder; (6) Guilford heard gunshots and then saw Calloway "trot[ting]" from the Grounds with a gun, SA166; (7) Calloway confessed to Guilford that he killed the Victim; and (8) Guilford witnessed a member of the Grounds shoot Calloway in retaliation. Second, Calloway's belief that Guilford's testimony was incredible or inconsistent does not make it perjurious.[5] See United States v. Rose, 215 F.2d 617, 622

---

[4] Cf. Harmon, 833 F.3d at 1204 & n.7 (holding no structural error occurred when the "intentional misconduct by the prosecution goes to a witness's credibility," as opposed to an "essential fact").

[5] Nor are Calloway's arguments persuasive. First, the fact that Guilford saw Calloway enter the Grounds from the south (the direction of the Pit does not mean that Calloway did not then circle the Grounds, locate the Victim, and shoot at the Victim from

(3d Cir. 1954) ("Perjury is the willful, knowing and corrupt giving, under oath, of false testimony material to the issue or point of inquiry."). Third, Calloway has provided no evidence from which we can conclude that the Government knowingly or recklessly permitted Guilford to falsely testify on an essential fact before the grand jury. Thus, even if we adopted the exceptions to the general rule that the petit jury's guilty verdict renders false, inaccurate, or contradictory grand jury testimony harmless, Calloway has not shown that any of those exceptions apply.

For these reasons, Calloway's grand jury argument fails.[6]

## B[7]

The District Court did not abuse its discretion in limiting Calloway's recross of Guilford and Roberts. The Confrontation Clause of the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted

---

north to south, consistent with the ballistics evidence. Second, the fact that Calloway is obese does not mean that he is incapable of "trot[ting]" from the scene of a crime. Third, the fact that Guilford did not hide after hearing gunshots is not unfathomable given Guilford's participation in Mill Creek drug activity. Fourth, the fact that Calloway spoke to Guilford—someone who purchased crack cocaine from Calloway several times per week for redistribution—about the Pit crew's operations, bragged to him about killing a rival gang member and cooked crack cocaine in front of him at the Funston Street house is conceivable. In short, Calloway has not shown that any of this testimony was so incredible that the prosecutor should have known it was perjurious.

[6] Because Calloway's grand jury challenge fails on its merits, we need not address whether it was untimely under Federal Rule of Criminal Procedure 12.

[7] We review "[l]imitations that a district court place[ed] on []examination [at trial]" for "abuse of discretion." United States v. Mussare, 405 F.3d 161, 169 (3d Cir. 2005). "The exercise of the [district] court's discretion necessarily operates not as a hard and fast rule, but according to the actual development of the case." United States v. Riggi, 951 F.2d 1368, 1375 (3d Cir. 1991).

6

with the witnesses against him," U.S. Const. amend. VI, and this "guarantees the right of a criminal defendant to confront witnesses for the purpose of cross-examination," United States v. Mussare, 405 F.3d 161, 169 (3d Cir. 2005). The Confrontation Clause also guarantees the right to recross "[w]hen material new matters are brought out on redirect examination." United States v. Riggi, 951 F.2d 1368, 1375 (3d Cir. 1991). Thus, a district court abuses its discretion when it prohibits all recross and does not allow recross on "new matters" raised in redirect. Id. at 1374-76.

Here, the District Court did not abuse its discretion in limiting recross of Guilford or Roberts because the Government did not raise any new matter in its redirect-examination of those witnesses. With Guilford, defense counsel sought to ask about the timing of Guilford's cooperation with law enforcement to suggest that he fabricated testimony against Calloway to secure preferential treatment. This questioning, however, does not concern a new matter raised on redirect: (1) on direct, the Government established that Guilford met with agents after his 2014 arrest; (2) on cross, defense counsel established that Guilford met with agents "several times about this case," A545, including after his arrest, and that Guilford answered their questions truthfully; and (3) on redirect, Guilford confirmed that he met with agents on several occasions and they did not tell him what to say. Because Guilford's redirect testimony did not raise new matter,[8]

---

[8] The District Court denied defense counsel's request for expansive recross, explaining that the Government simply "rebutted or explained everything [defense counsel] brought on cross." A562. We agree and note that this case is unlike Riggi, since, rather than impose a blanket restriction on all recross at trial, 951 F.2d at 1375, the

recross examination was not warranted.

On recross, defense counsel sought to ask Roberts about his fear of members of his own crew. This, again, did not concern a new matter raised on redirect: (1) on direct, Roberts testified that he was initially not forthcoming about identifying Calloway as the shooter because he was "afraid for [his] life and [] family," A364; (2) on cross, defense counsel confirmed that Roberts did not immediately tell Frederick Porter, the leader of the Grounds, that Calloway was the shooter, and then defense counsel cut off Roberts when Roberts tried to explain why; (3) on redirect, Roberts explained that he told his brother-in-law, Robert Keen, instead of Porter because Keen was "more like family" and Roberts feared that Porter would demand acts of "retaliat[ion]," which Roberts did not want to do, A407-08. Thus, we agree with the District Court that redirect did not raise any new matter. Instead, redirect allowed Roberts to explain an answer that defense counsel prevented Roberts from providing on cross.[9] Therefore, it was not an abuse of discretion for the District Court to allow only one question[10] to Roberts on recross about his reason for not speaking with Porter.[11]

_____

Court considered defense counsel's specific requests.

[9] To the extent defense counsel wished to recross Roberts about the specifics of his plea agreement (including who determines whether he is telling the truth), defense counsel probed that topic on cross and confirmed that it is the Government's decision alone whether to request a sentence reduction for Roberts.

[10] On recross, defense counsel asked, "Are you telling us that you were afraid to tell the people you work with about what happened?" and Roberts responded, "Yes." A413.

[11] Moreover, even if recross of either witness was improperly restricted, the restriction was harmless, see Riggi, 951 F.2d at 1376-78, because sufficient evidence

Thus, Calloway's Sixth Amendment arguments also fail.

III

For the foregoing reasons, we will affirm.

---

supported Calloway's conviction, see supra n.3. See also United States v. Pawlowski, No. 18-3390, --- F.4th ---, 2022 WL 628543, at *10 (3d Cir. Mar. 4, 2022) (concluding "the extent of [the defendant]'s opportunity to cross-examine [a witness] and the overall strength of the Government's case support the conclusion that any error [in limiting recross] was harmless").